HoWry, J.,
delivered the opinion of the court:
These are proceedings to set aside judgments rendered upon petitions filed under the act providing for the adjudication and payment of claims arising from the depredations of Indians (26 Stat. L., 851), and to grant new trials. The grounds of the motion alleged are: Error in holding the evidence to be insufficient to sustain the averments of the petitions, submission of the causes under misapprehension, and surprise at the action of the court because of statements *38 filed by defendants wbicb are alleged to be practical admissions of the commission of the depredations. And it is alleged that tbe claims can be sustained by evidence to be taken under the rules if opportunity to that end shall now be afforded.
The cases are two of a number submitted about the same time upon the ex parte showing of the respective claimants originally made in the Indian Office, but at a time when the Secretary of the Interior had jurisdiction and this court had not. They were submitted without any attempt to take testimony under the rules of the court in support of the causes of action. Inasmuch as other petitions were considered and determined adversely to the petitioners about the same time, and other cases of like kind and character may be presented hereafter, we deem it well to indicate the reasons which will hereafter constitute the general rule of- the court in passing upon unexamined and unallowed claims not supported by evidence other than that of affidavits filed in the Interior Department before the j urisdiction was transferred.
The second proviso of section 4 of the act of March 3,1891, declares that—
“In considering the merits of claims presented to the court, any testimony, affidavits, reports of special agents or other officers, and such .other papers as are now on file in the Departments, or in the courts, relating to any such claims, shall be considered by the court as competent evidence and such weight given thereto as in its judgment is right and proper.”
Under this statute the court can not hold that to be incompetent which the statute expressly declares shall be competent evidence. But the weight to be attached to the - affidavits, reports, and papers on file in the Interior Department as evidence, nevertheless, must be determined by the court, and nothing can diminish its responsibility in determining the value of this evidence. In conferring jurisdiction upon the court and directing the transmission of all thé documentary evidence in support of claims, it was intended by Congress that each demand should undergo strict judicial investigation. Without judicial examination into the conditions necessary to justify recovery the statute would have been an act of useless jurisdictional value (certainly of less value to *39 the defendants, in any event) in determining the merits of the claims in comparison with that state of affairs which already existed under the authority of the Secretary of the Interior, who, at the time of the passage of the jurisdictional act, was engaged in the active investigation of claims by agents in the held.
Ex parte statements, though under oath, are among the lowest kinds of evidence in courts. Affidavits are mainly general in their character and do not usually disclose anything to the disadvantage of those in whose interest they are presented, and much more caution should be exercised in accepting as true what they attempt to establish than evidence regularly taken under rules authorized for that purpose where both sides are represented at the time the matter proposed to be offered in evidence is put into the case. In judicial proceedings affidavits are most commonly used for certifying or proving service of process, or other matters relating to the proceedings in a case, or in support- of or opposition to motions, in cases where a court determines matters in a summary way. It is rarely the case that judgments can be entered upon mere ex parte statements, and in no other jurisdiction of this court can they be admitted or do thej'' receive the slightest consideration.
In these cases claimants’ affidavits, as originally filed in the Indian Office, appear to have been made upon printed forms which contain the statement that at the time of the alleged depredations Indians, generally understood to be the Comanche tribe, were raiding through the section of country designated in the petitions and were stealing or destroying stock belonging to the settlers. Aside from the want of anything specific identifying the tribe charged (and against whom judgment is also asked), the affidavits in their statements are open to much criticism. In one case the written part of the statement of claimant is made to appear in different handwriting, and there is a want of detail which the statements of the other two affi-ants do not at all supply. One of the affiants, and only one, does indeed corroborate the implied statement of the claimant that pursuit was made next day, but it becomes merely an inference that the taking, if claimant’s property was taken at all, was by Indians of any tribe. The names of the parties *40 said to be in pursuit are not given, and it is by no means certain any pursuit whatever was made. In the other case none of the affiants pretend to have seen an Indian. The claimant does indeed sajr two of his neighbors, whose names are given, had stock stolen at the same time, but their means of knowing that Indians were the depredators is narrowed down merely to a belief because, from their account of it thejr found some of the smaller stock on the range killed b}*- being lanced behind the shoulder. If that was the Indian way of disposing of the smaller stock, as we are asked to believe, white thieves could adopt it and injure settlers as well as Indians. Such statements, unsupplemented by any investigation whatever and without anjr kind of inquiry on the ground, are insufficient to enable us to determine with any kind of certainty the facts which the affidavits undertake to establish. Certainly in these cases these ex parte statements have not generated belief. The fact that the sums involved are small does not afford the least reason whjr we should ignore the strict rules of the law of evidence in the endeavor to attach weight to worthless testimony.
With full opportunity to prove the facts necessary to be proved and thereby of affording the defendants the chance of sifting by cross-examination the testimony offered in support of the claims, these claimants neglected to avail themselves of the privileges which they had in this regard (except to prove ■ by witnesses the jurisdictional fact of citizenship), thereby leaving the court to reasonably infer that either testimony could not be produced, or, if produced, would not stand the test of scrutiny.
It is elemental to say that the power of cross-examination is one of the principal as well as one of the most efficacious . tests which the law has devised for the discovery of truth. The experience of this court has justified the observation that it is not easy for witnesses subjected to this test by competent and diligent counsel to impose on the court. The value of cross-examination has been illustrated too often in these cases in obtaining correct and certain knowledge of the facts to which the witnesses have borne testimony and their means of knowing the circumstances to which they have undertaken *41 to testify to admit of the belief that attempted impositions have been materially successful. * ■
It is claimed, however, that the action of the court has been a surprise, because the briefs filed by the defendants practically admit the fact that the depredations were committed as alleged. It is hardly fair to the representatives of the United States to say that the briefs for the defense do any such thing. There are statements in the defendants’ briefs in totidem verbis that the affidavits are insufficient to establish the causes of action. Because other statements appear embodying the contention that if the testimony be sufficient to warrant judgment claimants can not recover for as much property as they allege, and because the value of what property was taken is not as much as is claimed, it does not follow that any of the facts relied on by claimants are practically admitted.
The act under which the suits have been brought is a remedial statute to compensate claimants generally for wrongs long since committed. These particular claimants may have been unnecessarily delayed in securing the attention of the department charged with the defense of the claims in the matter of taking proof, though there is nothing in the record to lead to any such conclusion. The court, however, has judicial knowledge .of the many difficulties in the way of claimants in securing the attendance of witnesses at the right time and in the right place for the attention of the limited force at the command of the proper office, growing out of the lapse of time since the events complained of, and we are not disposed to deny to the few small claims which have recently been premature^ and improvidently submitted an opportunity to invoke the cooperation of the Government in an effort now to obtain testimony of a more perfect nature. But claimants must observe the rules in the submission of cases and not experiment with the court with insufficient testimony. If those doing so shall find themselves out of court for want of sufficient evidence, they will not be heard to complain upon the ground of surprise after taking the risks incident to the submission of cases upon ex parte statements, to which so little weight can be attached.
In these cases new trials are awarded, because preceding *42 their submission no opinion disclosing the court’s estimate of the inherent weakness of affidavits standing alone had been handed down for the guidance of claimants and their counsel.