Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court.
This is an Indian depredation claim here under the act of March 3, 1891. The plaintiff’s intestate entered into a written contract on April 4, 1867, to carry the mails from Fort Abercrombie, Dakota Territory, to Helena, Montana Territory, for a period of three years, at an annual compensation of $84,000. This mail route was 1,000 miles in length. The contract was discontinued by the Government March 9,1868, and it is for the loss of property used by plaintiff’s intestate in the performance of said contract, alleged to have been stolen or destroyed by the defendant Indians, for which this suit is brought.
The case itself is typical of the class, possessing uniqueness only in the contention put forward to sustain it. The record as made up consists of 23 ex parte affidavits, certain departmental reports, and four depositions under the rules. *250 It can not be seriously contended that the depositions filed, aside from the testimony of plaintiff’s intestate, are in any wise significant.
Plaintiff earnestly urges the court to substantially disregard prior decisions in cases similarly situated and award judgment in this case because of the exceptional diligence manifested by the plaintiff in the prosecution of his case, which in this particular instance was uniformly met by the resistence of the Department of Justice. In fact, it is asserted, “ for them — the defendants — to be permitted to take advantage of this situation would be a hardship amounting practically to rank injustice.”
The 18 affidavits filed in the Indian Office and subsequently transmitted to the court were not so filed until February 28, 1889, although they were taken in the years 1867, 1868, and 1869. Twenty-one years or thereabouts were allowed to elapse before the attention of the Government was called to this enormous loss. It is true that Buffee, the original sufferer, attempts to excuse laches by testifying that he placed the papers in the hands of an agent or attorney — not definitely shown — for the purpose of prosecuting the case. In the ordinary course of business transactions, at least one involving a total sum in excess of $100,000, it is quite a novel proposition to attribute extraordinary diligence to a litigant who apparently seems to have allowed his agent or attorney to procrastinate for almost a quarter of a century before he calls him to account. There may be instances where one is lulled into repose for so long a period of time by an abiding confidence in his agent or attorney, but the common experience is to the contrary. Claimants with a large claim, with only prospective hopes of payment are most generally impatient and persistently inquisitive as to its final disposition. The presentation of Indian depredation claims to the Indian Office and Indian agents and superintendents in the field was quite general in extent, a well-known practice, in fact the only forum for the adjudication of claims prior- to the act of March 3,1891.
The original petition in this case was filed on March 17, 1891. The total loss claimed aggregated $100,104.60, and it *251 was not until three years thereafter, viz: January 13, 1894, that any proceedings in court were inaugurated to take the depositions of living witnesses. On January 16, 1894, the court by proper orders directed the taking of the testimony and one week later the plaintiff’s attorney filed the single deposition of the then plaintiff Ruffee. In August, 1916, three additional depositions were filed. Passing over for the present without comment the legislative impediments to a judicial investigation of Indian depredation cases prior to March 3, 1891, it would seem from this record that the defendants proceeded without more than the usual delays incident to the administration of a new jurisdictional statute involving, as it did, the investigation of a great volume of claims. As a matter of fact the case seems to have been expeditiously disposed of, no trial having been insisted upon because the testimony clearly disclosed its inevitable dismissal for noncitizenship. On November 9, 1896, the case was dismissed by agreement of counsel for noncitizenship. In October, 1916, the case was reinstated under the act of January 11,1915, and subsequently argued and submitted on January 16, 1918.
It is most difficult to perceive, in view of this undoubted record, wherein the plaintiff augments in the slightest degree a sedulous claim for particular consideration due in any wise to laches attributable to others than himself. The court may look to the circumstances surrounding the presentation of Indian claims and the situation of the parties with respect thereto in order to ascertain if the testimony presented is the best evidence obtainable, and where the necessities of the case preclude the adducing of primary evidence there may be instances where secondary evidence is admissable, but the case at bar is not within the rule. It possesses no features entitling the invocation of any exception to the fundamental rule of evidence that where the best evidence is obtainable it must be produced. The plaintiff had in his employ at various times during his contract performance four hundred men; he was traversing a territory one thousand miles in extent, an Indian country inhabited by numerous tribes of marauding bands constantly preying *252 upon the lives and property of the inhabitants and travelers passing through. To now say that it was impossible to sustain an unusual and enormous loss of personal property extending over a period of several months by the single deposition of the plaintiff — who himself knew nothing of the loss— corrobated only by the general ex parte affidavits of eighteen employees of the plaintiff, is indeed putting forward a contention the court feels unable to adopt. We do not mean to say we have not considered the affidavits or recognized their competency; on the contrary, we have given full force and effect to the provisions of the act of March 3, 1891, but we are absolutely unable to conclude that the case itself presents such an unusual aspect as to warrant the court in departing from the principles laid down in Jones v. United States, 35 C. Cls., 36.
Viewing the ease in its broadest and most liberal aspect, considering in this connection the departmental reports, it is reasonably certain that the plaintiff suffered a loss and if it were possible from the record before us to even approximate the extent of the same, the court would not be averse to doing so. The testimony of Ruffee taken in conjunction with the very sweeping and general statements of the eighteen affiants leaves us without a basis of even an estimation. Ruffee asserts that he lost all the property he put into the enterprise; according to his statement there was no salvage. Testing the accuracy of this statement we derive from his deposition that upon a business venture involving the annual return of $84,000 for three years, he invested the first year in horses, mules, general equipment, and wages paid employees, the total sum of nearly $140,000; he not only lost the initial investment but repeatedly and persistently replenished a commissary department, housed in fifty-two separate log stations, of sufficient proportions to care for a moving army. This was all done on not to exceed $90,000 accumulated by the plaintiff in a period of 10 years as a small Indian trader on the Chippewa Reservation in Minnesota. Ruffee himself knows nothing of the circumstances of the loss except as reported to him. If Ruffee is to be believed, the affiants are necessarily discredited. It is, of *253 course, impossible to award a money judgment payable out of the defendant Indians’ funds, if any are available, upon the testimony of Ruffee; so, in fact, we find the case resting alone upon the ex parte affidavits filed in the Indian Office. The court has never, at least since the Jones case, supra, in all the long course of Indian depredation claims, awarded a judgment against the defendants upon the uncorrobated statements appearing in ex parte affidavits. The unreliability of such testimony is fully attested by the fact of a voluntary reduction of the claim to the extent of over $70,000, and is strikingly illustrated by an instance especially set forth in the defendants’ brief, wherein it is clearly shown that one of the affiants undertakes to detail two separate depredations committed on the same day at two separate stations some four or five hundred miles apart.
There is, aside from the consideration of the merits of the case, a serious question of identity of the Indian tribes involved, thus raising the jurisdictional issue as to amity. The plaintiff filed a suit in this court, No. 6644, alleging a loss of $22,255, on the eastern extremity of the mail route in issue, against the Sioux Indians. This loss can not be for other property than that involved in the case at bar, and although subsequently dismissed for nonprosecution, is none the less effective in raising a very serious question as to what Indians committed the depredations now claimed for.
The petition is dismissed and judgment will be entered against the plaintiff in favor of the United States in the sum of $117.61, the cost of printing the record in this cause.
Hat, Judge; Downey, Judge; BarNey, Judge, and Campbell, Chief Justice, concur.